IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**MELISSA HUGHES,**

      **Plaintiff,**

v.                                      Case No.: 1:21-cv-00364

**KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable David A. Faber, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Motion for Judgment on the Pleadings and Defendant's brief requesting judgment in her favor. (ECF Nos. 18, 21).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF No. 18); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF

No. 21); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, **with prejudice,** and removed from the docket of the Court.

I.  **Procedural History**

On May 22, 2019, Plaintiff Melissa Hughes ("Claimant") protectively filed for DIB, alleging a disability onset date of August 19, 2016 due to "chronic back, neck, and leg pain; degenerative disc disease; spinal stenosis; osteophytes (bone spurs); peripheral neuropathy; arthritis; chronic migraines; depression and anxiety disorders; atrial fibrillation; and shortness of breath." (Tr. at 219-23, 237). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 25). Claimant subsequently filed a request for an administrative hearing, which was held on September 2, 2020 before the Honorable Lisa Parrish, Administrative Law Judge (the "ALJ"). (Tr. at 67-97). On October 1, 2020, the ALJ issued a written decision, finding that Claimant was not disabled as defined in the Social Security Act. (Tr. at 22-41). The ALJ's decision became the final decision of the Commissioner on December 17, 2020 when the Appeals Council denied Claimant's request for review. (Tr. at 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 13, 14). Thereafter, Claimant filed a Motion for Judgment on the Pleadings and Memorandum in Support, (ECF Nos. 18, 19), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 21). The time period within which Claimant could file a reply to the Commissioner's brief expired. Consequently, the matter is fully briefed and ready for resolution.

## II. Claimant's Background

Claimant was 49 years old on her alleged disability onset date and 51 years old on her date last insured. (Tr. at 34). She completed high school, communicates in English, and previously worked as a stock clerk and food sales clerk. (Tr. at 93, 236, 238).

## III. Summary of the ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination,

3

the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or

4

managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for DIB through September 30, 2018. (Tr. at 28, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity from her alleged onset date through her date last insured. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, migraines, major depressive disorder, and generalized anxiety disorder. (*Id.*, Finding No. 3). The ALJ also considered Claimant's irritable bowel syndrome, gastroesophageal reflux disease, and obesity, but

5

the ALJ found that the impairments were non-severe. (Tr. at 28). The ALJ further concluded that Claimant's fibromyalgia was not a medically determinable impairment. (Tr. at 29).

Under the third inquiry, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 29-31, Finding No. 4). Accordingly, the ALJ found that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could not climb ladders, ropes, or scaffolds; occasionally perform other postural movements; occasional[ly] push and pull with the bilateral upper extremities; could work in a noise environment of moderate or less; could only occasionally work near hazards, as defined by the Dictionary of Occupational Titles; could only occasionally work in extreme temperatures; she was limited to simple, routine tasks and can make simple work-related decisions; she could not work with the public in a customer service capacity; and she could not work at an assembly line pace.

(Tr. at 31-34, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform any past relevant work. (Tr. at 34, Finding No. 6). Therefore, the ALJ reviewed Claimant's past work experience, age, and education in combination with her RFC to determine her ability to engage in other substantial gainful activity. (Tr. at 34-36, Findings 7 through 10). The ALJ considered that (1) Claimant was born in 1967 and was defined as a younger individual age 18-49 on her alleged onset date, but she subsequently changed age category to an individual closely approaching advanced age; (2) Claimant had at least a high school education; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled" regardless of her transferable job skills. (Tr. at 34-35, Findings 7 through 9). Taking into account these

factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a bench assembler, cleaner, and office helper. (Tr. at 35-36, Finding No. 10). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 36, Finding No. 11).

## IV. Claimant's Challenges to the Commissioner's Decision

Claimant asserts two challenges to the Commissioner's decision concerning her mental impairments. (ECF No. 19 at 5-8). She argues that the ALJ erred in performing the special technique and assessing her RFC to interact with others. (*Id.*). In response, the Commissioner simply argues that substantial evidence supports the ALJ's mental RFC finding. (ECF No. 21 at 7-11).

## V. Relevant Medical History

The undersigned reviewed all of the evidence before the Court. The evidence that is most relevant to the instant matter is summarized as follows.

### A. Treatment Records

On May 12, 2016, psychologist Samantha Mann, M.A., evaluated Claimant due to symptoms of exacerbated depression, nightmares, and crying spells for the past two weeks. (Tr. at 473). Claimant was self-employed as part-time photographer, but she said that she could not "hold down a job" for very long because she quit if a man treated her in a way that reminded her of her abusive ex-husband. (Tr. at 473-74). Claimant's mental status examination was normal other than depressed mood with congruent sad and tearful affect. (*Id.*). She was diagnosed with persistent depressive disorder and chronic post-traumatic stress disorder. (Tr. at 475).

Claimant presented to Brandi Huffman, PA-C, on April 3, 2017. PA-C Huffman recommended Cymbalta for Claimant's depression and fibromyalgia, but Claimant was hesitant because adding Cymbalta would require a tapered dosage of Tramadol for back pain. (Tr. at 447). Claimant was also taking Valium three times per day. (*Id.*). PA-C Huffman renewed Claimant's Tramadol at her usual dose, but Claimant stated that she would try to decrease her use of Valium over the next month and hopefully decrease her use of Tramadol at some point in the future. (Tr. at 449.

During follow up with PA-C Huffman on June 27, 2017, Claimant noted that she was injured during a yard sale on Saturday. (Tr. at 440). In the social history section of Claimant's clinical record, PA-C Huffman listed that Claimant was working full time, had no mental disability, and was self-reliant in her usual daily activities. (Tr. at 441). On October 24, 2017, Claimant told PA-C Huffman that she had no complaints and was currently very active in church, including being the church photographer and directing the Christmas play. (Tr. at 436). Through October 2018, PA-C Huffman included the same note in the social history section of Claimant's record that Claimant was working full time, had no mental disability, and was self-reliant in her usual daily activities (Tr. at 416, 420, 425, 429, 433, 437).

In May through July 2020, Claimant participated in psychotherapy with psychologist Deborah C. Nolley, M.S. She continued to report symptoms of depression and anxiety and displayed abnormal mood and affect, but her memory/cognition was intact and her thought processes were within normal limits. (Tr. at 908-12). On March 3, 2020, Claimant complained of frequent panic attacks, uncontrollable crying episodes, severe depression, increased appetite, weight gain of 30 pounds in three months, extreme anxiety going to new places, social isolation, and difficulty concentrating. (Tr. at 851). She

8

denied any history of psychiatric hospitalizations or suicide attempts, but she noted that she received therapy and psychotropic medications. (*Id.*). Claimant continued to take Cymbalta; lived with her fourth husband; and had no contact with her children, who were 20, 23, and 25 years old. (*Id.*). Claimant expressed that she had difficulty dealing with the public due to the severity of her anxiety and applied for social security disability. (*Id.*).

On May 6, 2020, Claimant reported to Ms. Nolley that her depression and anxiety remained severe, she rarely interacted with anyone other than her husband, and the extent of her activities in recent months included going on walks with her husband at a local park. (Tr. at 908). Later that month, Claimant also complained to Ms. Nolley that she had more frequent panic attacks. (Tr. at 909).

### B. Prior Administrative Findings

On September 10, 2019 and October 24, 2019, Rosemary L. Smith, Psy.D., and Jeff Harlow, Ph.D., respectively, found that there was insufficient evidence in the record to perform psychiatric review techniques. (Tr. at 104-05, 113-14).

### C. Claimant's Testimony

Claimant testified during her administrative hearing on September 2, 2020 that she could not keep a job since 2008 because of her anxiety, panic disorder, not being able to work with customers or coworkers, and not being able to physically perform the work because of anxiety. (Tr. at 78). She stated that she did not work after 2016, although her husband gave her a camera for her birthday and she attempted to become a photographer, it never "took off" and she never made any money from the endeavor. (Tr. at 81). (*Id.*). Claimant testified that from August 2016 to mid-2018, she took diazepam, but continued having panic attacks some days, which were triggered by people approaching her. (Tr. at 86).

## VI. <u>Scope of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII. <u>Discussion</u>

Claimant's challenges concern the special technique that applies to mental impairments and RFC assessment. Each argument is discussed below, in turn.

### A. *Special Technique*

Claimant argues that the ALJ erred in relying on evidence outside of the relevant period of August 19, 2016 (alleged onset date) to September 30, 2018 (date last insured) to perform the special technique without explaining why that evidence was probative of

10

the severity of her mental impairments during the relevant period. (ECF No. 19 at 6-7). She further notes that it is unclear whether the ALJ assessed that she was mildly or moderately limited in the functional area of managing herself. (*Id.* at 5-6 n.1).

### 1. Understanding, remembering, and applying information

The ALJ assessed that Claimant was mildly limited in understanding, remembering, and applying information on the basis that Claimant alleged memory limitations, but her memory was intact at several examinations in May 2016 and May 2020. (Tr. at 30); *see* (Tr. at 474, 908, 909). The ALJ had a duty to consider all relevant evidence to obtain a longitudinal picture of Claimant's overall degree of functional limitation, including all relevant and available clinical signs and laboratory findings. 20 C.F.R. § 404.1520a(c)(1). She cited that Claimant's memory was intact in May 2016, which was only a few months before Claimant's alleged onset date in August 2016, and it remained intact through at least May 2020, well after Claimant's date last insured in September 2018. Claimant does not cite a scintilla of evidence that the ALJ failed to consider in this functional domain, or which conflicted with the intact memory findings that the ALJ cited. While Claimant was treated for mental conditions from her alleged onset date to her date last insured, those records did not specifically concern her memory. Therefore, in order to evaluate this area of mental functioning, the ALJ cited records closing, preceding and following the relevant period which contained specific mental status examination findings.

Undoubtedly, the issue before the ALJ was whether Claimant established disability from her alleged onset date to her date last insured. However, to evaluate the severity of Claimant's limitations during that period, given the dearth of mental status examination evidence within the relevant time frame, the ALJ considered the longitudinal medical

record showing that Claimant's memory remained intact throughout the available records. The ALJ adequately established the relevance of the records to the time period under consideration. *See Bird v. Comm'r of Soc. Sec.,* 699 F.3d 337, 341–42 (4th Cir. 2012) (stating that evidence post-dating the date last insured is relevant and can be considered where "that evidence permits an inference of linkage with the claimant's pre-DLI condition."); *Lewis v. Saul*, No. 5:19-CV-02298-DCN, 2021 WL 1040512, at *3 (D.S.C. Mar. 18, 2021) (discussing the ALJ's obligation to consider probative evidence dated prior to the alleged onset date). For those reasons, the undersigned **FINDS** that the ALJ's assessment of Claimant's ability to understand, remember, and apply information is supported by substantial evidence.

### 2. Interacting with others

The ALJ assessed that Claimant's ability to interact with others was moderately limited because she distrusted others due to past abuse, displayed isolative behavior, and experienced panic attacks, but she was cooperative with others during examinations in May 2016 and 2020 and able to interact with others to participate in a yard sale in June 2017. (Tr. at 30); *see* (Tr. at 440, 474, 908). Claimant only challenges the fact that the ALJ considered evidence before her alleged onset date and after her date last insured without linking it to the relevant period other than to mention of her participation in a yard sale. Claimant again fails to show that the ALJ misapplied the special technique or identify any critical or conflicting evidence which the ALJ neglected to consider. The ALJ relied on longitudinal evidence of Claimant's cooperation with medical providers and her participation in a yard sale during the relevant period to evaluate the severity of Claimant's functional limitation. Reviewing the record along with the decision, the undersigned **FINDS** that the ALJ's analysis of the severity of Claimant's ability to interact

with others is supported by substantial evidence.

### 3. Concentrating, persisting, or maintaining pace

The ALJ likewise assessed that Claimant's concentration, persistence, or pace were moderately limited because, although Claimant alleged limitations completing tasks, concentrating, and following instructions, she worked part-time in May 2016, had normal thought processes in May 2016 and 2020, and was self-reliant in daily activities in October 2018. (Tr. at 30); *see* (Tr. at 420, 474, 908, 909). Claimant fails to identify any error in the ALJ's well-supported analysis. The ALJ considered that Claimant worked part-time only a few months before her alleged onset of disability, maintained normal thought processes, and was self-reliant during the relevant period. Claimant's assertion that the ALJ failed to correlate the evidence to Claimant's functioning during the relevant period is without merit. Therefore, the undersigned **FINDS** that the ALJ's analysis of the severity of Claimant's ability to concentrate, persist, or maintain pace is supported by substantial evidence.

### 4. Managing Oneself

In the area of managing oneself, the ALJ considered that Claimant reported depression, anxiety, and a history of abuse with associated flashbacks, but she denied any history of suicide attempts, suicidal ideation, or psychiatric hospitalizations. (Tr. at 30-31). However, the ALJ's finding in this functional domain is unclear. At the beginning of the analysis, the ALJ stated that Claimant had mild limitation, but she concluded it by stating that Claimant was moderately limited in this functional category. (Tr. at 30-31). That discrepancy precludes meaningful review. The Court cannot evaluate whether the ALJ's analysis of Claimant's mental functioning is supported by substantial evidence without knowing the specific rating that the ALJ assessed and why. For that reason, the

13

undersigned **FINDS** that the ALJ's analysis of Claimant's ability to manage herself is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reexamine or elaborate upon her findings in this functional domain.

### B. RFC Assessment

Claimant further argues that the ALJ did not fully explain her RFC assessment concerning Claimant's ability to interact with others. (ECF No. 19 at 7-8). Social Security Ruling ("SSR") 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the *most* that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.* The ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR § 404.1545(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7. While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

In this case, the ALJ concluded that Claimant could not work with the public in a customer service capacity due to her distrust of others and isolative behavior. (Tr. at 33). The ALJ stated that no additional limitations were warranted because, *inter alia*, Claimant was cooperative on examination, interacted with others in a yard sale, and worked part-time. (*Id.*). The activities that the ALJ listed seem to mostly involve some

15

measure of public interaction and customer service, which does not reconcile with the ALJ's assessment that Claimant could have no contact with the public in a customer service capacity. Furthermore, there was conflicting evidence in this functional domain that the ALJ did not resolve. As Claimant points out, the ALJ provided "no explanation as to why [Claimant's distrust of others and isolative behavior] had no limiting effect on [her] ability to appropriately interact with coworkers and/or supervisors." (ECF No. 19 at 7). Although Claimant stated that she had difficulty dealing with the public and unsuccessfully attempted to work as a self-employed part-time photographer, which the ALJ may have found indicative of a customer-service limitation, Claimant also stated that she could not maintain employment, in part, due to her inability to deal with coworkers. (Tr. at 78). Indeed, she reported that she was prone to quit a job when *any* man in the employment arena treated her in a manner that reminded her of prior abuse by her ex-husband. (Tr. at 474). She also described having a dysfunctional social and family life. Her childhood was traumatic; she had no contact with any of her children; and she rarely interacted with anyone other than her third husband. (Tr. at 473, 851, 908). The ALJ failed to address the evidence concerning Claimant's inability to interact with familiar people, including coworkers, in any meaningful manner.

The ALJ was required to evaluate Claimant's ability to respond appropriately to supervision, coworkers, and work pressures in a work setting, if those functions were implicated by the evidence. 20 CFR § 404.1545(c); *Mascio*, 780 F.3d at 636 (stating that the ALJ must address the claimant's ability to perform relevant functions when there is contradictory evidence in the record); *Dennis v. Berryhill*, 362 F. Supp. 3d 303, 309 (W.D.N.C. 2019) ("While the ALJ is not required to include a corresponding restriction to address interactions with each category of individuals—coworkers, supervisors, and the

16

public—in her RFC determination, the burden is on the ALJ to make findings of fact and resolve evidentiary conflicts."). The record in this case demanded an analysis of those functions. Because the ALJ failed to build a complete and logical bridge from evidence to conclusion, the undersigned **FINDS** that the RFC assessment is not supported by substantial evidence. On remand, the ALJ should reconsider or elaborate upon her analysis of Claimant's ability to interact with others in a work setting.

### VIII.  Recommendations for Disposition

For the above reasons, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's motion to the extent that it requests remand of the Commissioner's decision, (ECF No. 18); **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 21); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de*

*novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:**  March 7, 2022

Cheryl A. Eifert
United States Magistrate Judge